UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GERRY D. BURNETT,

        *Plaintiff*,

  v.

U.S. DRUG ENFORCEMENT
ADMINISTRATION,

        *Defendant*.

Civil Action No. 1:19-cv-00870 (CJN)

### MEMORANDUM OPINION

In this suit under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, Gerry Burnett seeks to compel the Drug Enforcement Administration to release records detailing the methods used to identify him in a controlled drug purchase and his eventual criminal prosecution in 2012. *See generally* Compl., ECF No. 1. The DEA claims that it has adequately searched for responsive records and produced non-exempt materials. *See generally* Def.'s Cross-Mot. and Opp'n to Pl.'s Mot. for Summ. J., ECF No. 12 ("Def.'s Mot."). Both Parties have moved for summary judgment, *id.*; Pl.'s Mot. for Summ. J., ECF No. 10 ("Pl.'s Mot."), and Burnett has requested an *in camera* review of the withheld materials. Because the government has conducted an adequate search and complied with its disclosure obligations, the Court denies Burnett's motions and awards summary judgment to the DEA in full.

### I.    Background

On April 30, 2018, Gerry Burnett submitted a FOIA and Privacy Act request to the DEA for

1

> [a f]ull copy of my search warrant (inventory sheet, etc.) for 1707 D St. S.E. Washington, DC.  Next, all methods of surveillance used in the investigation of Gerry D. Burnett and 1707 D St. S.E. (cell site simulator—Stingray, Triggerfish, etc.) specifically between 9/15/11—9/29/11, full discovery.  Also, what method was used to identify Gerry Burnett as the "unidentified mail" [sic] over by the jail during the 1st controlled buy on 9/16 referenced in the DEA-6.

*See generally* Compl.; Def.'s Mot. Ex. A, ECF No. 12-1 ("FOIA Request").  The request also cited the docket number of the criminal prosecution that resulted in Burnett's conviction.  *See generally* Compl.; FOIA Request.  After receiving assurances that DEA was handling his request as "expeditiously as possible" but being provided no date upon which he would receive a substantive response, Burnett filed this suit on March 27, 2019.  *See generally* Compl.  On November 8, 2019, DEA responded to Burnett's request, releasing the file for his arrest and prosecution as well as additional records responsive to his request.  *See* Decl. of Angela D. Hertel ¶ 13, ECF No. 12-1 (Hertel Decl.).  In total, the DEA released four pages in full, released forty-one pages with redactions, and withheld five pages in full.  *Id.*  DEA asserted that its redactions and withholdings were made under Privacy Act Exemption (j)(2) and FOIA Exemptions 6, 7(C), 7(D), 7(E), and 7(F).  *Id.* ¶¶ 13, 18–20.  Burnett moved for summary judgment, arguing that the DEA had not conducted an adequate search and contesting its invocations of the claimed exemptions.  *See generally* Pl.'s Mot.  The DEA cross-moved for summary judgment on the basis that it had complied with all of its disclosure obligations.  *See generally* Def.'s Mot.

## II.   Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "FOIA . . . mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011). "FOIA mandates a 'strong presumption in favor of disclosure,'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d

2

26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991))—so much so that FOIA "expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter *de novo*,'" *U.S. Dep't of Justice v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

### III.   Analysis

#### A.   The Search's Adequacy

Burnett first contests the adequacy of the government's search, asserting that "they possibly did no search at all." Pl.'s Mot. at 1.

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 4 (D.C. Cir. 1999) (internal quotation omitted). "The agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.* at 326 (internal quotation and alterations omitted). "The agency cannot limit its search to only one or more places if there are additional sources that are likely to turn up the information requested." *Id.* (internal quotations omitted). "In a suit seeking agency documents—whether under the Privacy Act or FOIA—at the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, the court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) (internal quotations omitted).

The DEA explained its search methodology in a declaration by Angela Hertel, the unit chief who oversees FOIA/Privacy Act processing. *See* Hertel Decl. ¶¶ 1–2, 16–17. That

declaration explains that all DEA investigative records are maintained in the agency's Investigative Reporting and Filing System ("IRFS"). *Id.* ¶ 6. An individual is identified in the IRFS index system by name, Social Security Number, or date of birth. *Id.* ¶ 9. Hertel's declaration indicates that, because it interpreted Burnett's request as "seeking records associated with the search warrant issued for 1707 D Street, S.E., Washington, D.C., records associated with any surveillance conducted on [Burnett] and the [1707 D Street address] from September 15, 2011 to September[] 29, 2011, and records discussing [Burnett's] involvement in a 'controlled buy' on September 16, 2011," *id.* ¶ 16, DEA searched IRFS by querying the index system using Burnett's name, *id.* ¶ 14. As for Burnett's request for "the methods used to surveil" him and his address and to identify him during the "controlled buy," DEA asserts that it need not respond to those requests because they are merely questions posed as FOIA requests. *Id.* ¶ 17.

Burnett lodges two challenges to the adequacy of DEA's search. *See* Pl.'s Mot. at 1. First, he argues that the DEA "possibly did no search at all" because the released documents can be pulled from public records. Pl.'s Mot. at 1. Second, he argues that the search was inadequate because it did not address his "surveillance issues," *id.*, and that his request was "a statement or a command[,] not a question." Pl.'s Resp. to Def.s Mot. at 1, ECF No. 13 ("Pl.'s Resp.").

But each of Burnett's challenges misses the mark. Although in some circumstances a FOIA plaintiff may point to the availability of public records to demonstrate that an agency cannot withhold the documents pursuant to a statutory exemption, *see, e.g.*, *Blanton v. Dep't of Just.*, 64 F. App'x 787, 789 (D.C. Cir. 2003), the mere public availability of certain documents does not evidence an inadequate search. And as for Burnett's contention that his request for information regarding surveillance was a proper request for records, not a question, the form of his submission is irrelevant. FOIA does not require federal agencies to provide information; it requires them to

release records.  *See* 5 U.S.C. § 552(b); *see also Jean-Pierre v. BOP*, 880 F. Supp. 2d 95 (D.D.C. 2012) (request for name of guard who gave order, reason for order, and date of conversation between employees was not valid request because complainant was seeking "specific pieces of information rather than records").  Burnett's requests for "methods of surveillance" and the "method used to identify" him, FOIA Request at 1, are requests for information, not for records.

Having answered each of Burnett's objections, the DEA has sufficiently demonstrated that its search was "a good faith effort . . . using methods which can be reasonably expected to produce the information requested," *Valencia-Lucena*, 180 F.3d at 326, and is entitled to summary judgment on that question.

### B.  Privacy Act Exemption (j)(2)

That leaves the question of whether the DEA is required to produce any of the material located in its search but withheld or redacted pursuant to a statutory exemption.  As a preliminary matter, the DEA argues that it is not obligated make any disclosures pursuant to the Privacy Act because all of the relevant materials are contained in a system that is exempted from the Act's disclosure provisions.  Hertel Decl. ¶¶ 18–20.

The Privacy Act permits a qualifying agency to exempt, by rule, records systems from the Act's disclosure requirements if they consist of

> (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a (j)(2).  As an agency that "performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime

5

or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities," the DEA may exempt such systems. *Id.* Because the DEA has properly promulgated regulations exempting its records database from the Privacy Act's disclosure provisions, *see* Hertel Decl. ¶¶ 19–20 (citing 28 C.F.R. § 16.98), the DEA properly withheld materials pursuant to Privacy Act Exemption (j)(2).

### C. FOIA Exemptions

The Court next turns to the DEA's redactions and withholdings under FOIA Exemptions 6, 7(C), 7(D), 7(E), and 7(F). Hertel Decl. ¶¶ 13, 22–42. To prevail on a FOIA exemption claim, an agency must demonstrate "that each document that falls within the class requested . . . is wholly exempt from the Act's inspection requirements." *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). Although the Court examines the facts and inferences in the light most favorable to the requester, an agency may satisfy its burden to prove the applicability of an exemption by affidavit. *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). Summary judgment is warranted when the affidavits "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Id.* (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). Declarations supporting an agency's motion for summary judgment "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Pinson v. U.S. Dep't of Justice*, 160 F. Supp. 3d 285, 293 (D.D.C. 2016) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it

6

appears "logical" or "plausible." *Larson*, 565 F.3d at 862 (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)).

FOIA authorizes agencies to withhold qualifying information if disclosure would risk any of several enumerated harms. 5 U.S.C. § 552(b). To justify its withholdings here, the DEA invokes Exemption 6 and four prongs of Exemption 7 by arguing that release of the withheld information might (1) constitute an unwarranted invasion of personal privacy (Exemptions 6 and 7(C)); (2) disclose the identity of confidential sources or information furnished by confidential sources (Exemption 7(D)); or disclose law enforcement techniques or procedures and increase the risk of (3) evasion of law enforcement (Exemption 7(E)) or (4) harm to any individual (Exemption 7(F)). Burnett appears to challenge the applicability of each exemption and requests an *in camera* review of the withheld information. *See* Pl.'s Mot. at 1–2; Pl.'s Resp. at 1–2.

### 1. Exemptions 6 and 7(C)

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To invoke Exemption 6, an agency's explanation "must show that the documents come from the type of files that are statutorily protected, and must also show that, on balance, the public interest in disclosure does not outweigh the personal privacy interest of the individual who is the subject of the file." *Allen v. Dep't of Def.*, 658 F. Supp. 15, 21 (D.D.C. 1986) (citing *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976)). In a similar vein, Exemption 7(C) covers law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C). When evaluating an agency's invocation of Exemption 7(C), the Court generally defers to the agency's claim that the information is compiled for law enforcement purposes, *Pub. Emps. for Envtl. Responsibility v.*

*U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 203 (D.C. Cir. 2014), and examines whether the agency has sufficiently demonstrated that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C).

But even when disclosure implicates private interests, the government may be required to disclose documents if the individual seeking the information demonstrates

> a public interest in the information that is sufficient to overcome the privacy interest at issue. In order to trigger the balancing of public interests against private interests, a FOIA requester must (1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest. If the public interest is government wrongdoing, then the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

*Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 386–87 (D.C. Cir. 2007) (internal quotation marks and citations omitted).

The DEA has explained that its withholdings under Exemptions 6 and 7(C) included information that could be used to identify law enforcement personnel and third parties, including confidential informants. Hertel Decl. ¶¶ 26–27.[1] It further contends that there is no public interest that outweighs the privacy interests of the individuals discussed or mentioned in those reports. *Id.* ¶ 28. Burnett's public-interest challenge to this argument fails because he does not proffer any evidence that could reasonably indicate impropriety. *See Boyd*, 475 F.3d at 386–87.

---

[1] In particular, DEA explained that the withheld information consisted of "names of law enforcement personnel, their initials, names of third-party individuals, telephone numbers and addresses, fugitive declarations, vehicle registrations that could be used to identify third-parties, signatures of law enforcement personnel, [index system information], DEA routing information that would reveal law enforcement personnel, criminal associates, information derived from sources of information, confidential source numbers, and the like." Hertel Decl. ¶¶ 26–27.

### 2. Exemption 7(D)

The DEA next invokes Exemption 7(D) to withhold information that would likely reveal the location and identity of confidential sources or information furnished by those sources. Hertel Decl. ¶¶ 29–32. Exemption 7(D) applies to law enforcement information that

> could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). Here, the DEA has explained that it applied Exemption 7(D) to information about or provided by confidential sources involved in the investigation into Burnett's illegal activities. Hertel Decl. ¶ 29. It asserts that those informants acted with an understanding of confidentiality and that disclosure of the withheld information could jeopardize DEA operations or threaten confidential sources and their family members. *Id.* ¶ 32. Burnett proffers no specific objection to any of these claims. *See generally* Pl.'s Resp.

### 3. Exemption 7(E)

DEA next explains its withholding of information that would reveal investigative techniques and increase the risk of circumvention of the law. Hertel Decl. ¶¶ 33–37.

Exemption 7(E) applies when law enforcement records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). It "sets a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). "[T]he exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally

9

expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Id.* at 1194 (internal quotation and alterations omitted). Moreover, as the Court of Appeals stated in connection with another law-enforcement agency,

> [b]ecause the FBI specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference. [The] court's deferential standard of review is not, however, vacuous. If the FBI relies on declarations to identify a law enforcement purpose underlying withheld documents, such declarations must establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law. If the declarations fail to supply facts in sufficient detail to apply the . . . rational nexus test, then a court may not grant summary judgment for the agency.

*Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998) (internal quotations and citations omitted).

Here, the DEA has explained that it withheld information concerning investigative reporting procedures that document criminal activity, including information about meetings with confidential sources and acquisition of other evidence, as well as information indicating "the classification of [specific suspects], the types and amount of suspected drugs involved, the priority of the investigation, and the suspected location and scope of criminal activity." Hertel Decl. ¶ 35. As for the risk of circumvention of law enforcement, the DEA contends that, if disclosed, the information would enable criminal suspects to "change their patterns of drug trafficking . . . to respond to what they determined the DEA knows about them, develop enforcement

10

countermeasures, avoid detection and apprehension, [and] create [excuses or] alibis for suspected activities." *Id.*

### 4. Exemption 7(F)

In addition to the exemptions discussed above, the DEA invokes Exemption 7(F) to withhold "names of DEA Special Agents, other law enforcement personnel, [and] individuals involved in criminal investigations" contained within "DEA Form 6s, the search warrant, and [arrest and seizure reports]." Hertel Decl. ¶ 39.

Exemption 7(F) protects against the disclosure of law enforcement information that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "The exemption does not require that a particular kind of individual be at risk of harm; 'any individual' will do. Disclosure need not definitely endanger life or physical safety; a reasonable expectation of danger suffices." *Pub. Emps. for Envtl. Responsibility*, 740 F.3d at 205. Here, the DEA has explained that disclosing the names of individuals involved in drug investigations could result in "harassment, reprisal or physical retaliation" against those individuals—and notes that such dangers have been realized on several occasions. Hertel Decl. ¶¶ 41–42. Plaintiff makes no serious effort to respond to this quite reasonable argument.

\* \* \*

All of the DEA's explanations for the invoked exemptions are reasonably detailed, logical, and plausible. *See Larson*, 565 F.3d at 862 (quoting *Wolf*, 473 F.3d at 374–75). The Court therefore concludes that it has properly made and justified those invocations.

### D. Segregability

Even when parts of a document are protected by a FOIA exemption, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."

11

*Mead Data Cent. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Courts have an "affirmative duty" to consider whether any non-exempt segregable material can be released. *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007). Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material, *Boyd v. Crim. Div. of the U.S. Dep't of Justice*, 475 F.3d 381, 382 (D.C. Cir. 2007), and the Court may rely on agency affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated, *see Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996).

Of the fifty pages of records responsive to Burnett's request, the DEA contends that it released four pages in their entirety, released forty-one pages with redactions, and withheld five pages in full. Hertel Decl. ¶ 43. As to the five pages withheld in full, the DEA asserts that it withheld pages entirely only when all of the information was withheld pursuant to an applicable exemption and/or would "provide no useful information, or incomprehensible words or phrases that would not shed any light on how the Government conducts business." *Id.* It avers it examined each page to determine whether there was (and if so, produced) any reasonably segregable information. *Id.* ¶ 44. Burnett does not argue that the DEA failed to adequately segregate and produce non-exempt information. The Court therefore finds that the DEA has complied with its obligations to produce any non-exempt information that may reasonably be segregated for release.

### 5. *In Camera* Review

On a final note, Burnett requests that the Court review the withheld information *in camera*. *See* Pl.'s Resp. at 1–2. While FOIA does permit the Court to review records *in camera* "to determine whether such records or any part thereof shall be withheld under any of the exemptions," 5 U.S.C. § 552(a)(ii)(4)(B), such review is often unnecessary. The Court of Appeals has set forth

criteria for determining the need for such review, including: (1) judicial economy, (2) the conclusory nature of the agency affidavits, (3) possible bad faith on the part of the agency, (4) whether the agency proposes in camera review, (5) disputes concerning the content of the document, and (6) the strong public interest in disclosure. *See Allen v. CIA*, 636 F. 2d 1287, 1297–99 (D.C. Cir. 1980), *abrogated on other grounds by Founding Church of Scientology v. Smith*, 721 F.2d 828 (D.C. Cir. 1983). Here, Burnett's mere speculation that the DEA may have engaged in some impropriety, *see generally* Pl.'s Mot.; Pl.'s Resp., cannot form the basis for *in camera* review, *see Elgabrowny v. CIA*, No. 17-cv-00066, 2020 WL 1451580, at *11 (D.D.C. Mar. 25, 2020) (citing *DiViaio v. Kelley*, 571 F.2d 538, 543 (10th Cir. 1978) (finding that if courts were to conduct an in camera review each time a requester alleged the possibility of untruthfulness or existence of nonexempt material, an in camera review would be required in every FOIA case, which is "clearly not what congress intended")). And because the DEA has adequately justified its search and production (and because there is no evidence that it engaged in impropriety) *in camera* review is unwarranted.

## IV.   Conclusion

The DEA has demonstrated that it conducted an adequate search for records responsive to Burnett's request, has provided reasonably detailed justifications for its withholdings, and has produced any non-exempt information that may reasonably be segregated. The Court therefore denies Burnett's Motion for Summary Judgment and grants summary judgment for the DEA in full. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE: March 31, 2021

CARL J. NICHOLS
United States District Judge